```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X

JAMES MATTHEW SCHMIDT,


                    Plaintiff,
                                              MEMORANDUM AND ORDER
     -against-
                                              20-CV-3594(KAM)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

---------------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

Plaintiff James Schmidt ("plaintiff") appeals the final decision of the Commissioner of Social Security ("defendant" or the "Commissioner") finding him not disabled within the meaning of the Social Security Act (the "Act") and not entitled to disability insurance benefits under Title II of the Act. Plaintiff and the Commissioner have cross moved for judgment on the pleadings. For the reasons herein, plaintiff's motion is **GRANTED**, the Commissioner's motion is **DENIED**, and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order.

## **Background**

The parties have filed a joint stipulation of relevant facts, which the court has reviewed and incorporates by reference. (*See generally* ECF No. 19-1, Joint Stipulation of Facts ("Stip.").) Here, the court briefly recounts the facts relevant to the instant motions.

Plaintiff was born in 1965 and was a firefighter for the New York City Fire Department. (Stip. at 1.) He filed an application for disability insurance benefits on May 31, 2016. (ECF Nos. 21–21-1, together, Administrative Transcript ("Tr."), at 10.) Plaintiff alleged disability beginning on February 23, 2012 due to gastroesophageal reflux disease ("GERD"), Barrett's esophagus, chronic sinusitis, sleep apnea, asthma, high blood pressure, high cholesterol, herniation and bulging discs in the spine, and right shoulder injury. (*Id.* at 36–37, 229.)

The ALJ determined that plaintiff had the following impairments that severely limited his ability to perform basic work activities: degenerative disc disease of the cervical and lumbar spines, shoulder disorder, knee disorder, GERD, asthma, deviated septum with chronic sinusitis, and obstructive sleep apnea. (*Id.* at 13.) The ALJ concluded that plaintiff's coronary artery disease, hypertension, and hyperlipidemia were non-severe impairments. (*Id.*)

## Standard of Review

A claimant must be "disabled" within the meaning of the Act to receive benefits. *See* 42 U.S.C. §§ 423(a), (d). A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other kind of substantial gainful work. 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Commissioner set forth a five-step sequential evaluation process for determining whether a claimant meets the Act's definition of disabled. *See* 20 C.F.R. § 404.1520. The Commissioner's process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)); *accord* 20

C.F.R. § 404.1520(a)(4). During this five-step process, the Commissioner must consider whether "the combined effect of all of [a claimant's] impairments," including those that are not severe, would be of sufficient severity to establish eligibility for Social Security benefits. 20 C.F.R. § 404.1523(c).

"The claimant has the general burden of proving . . . his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Burgess*, 537 F.3d at 128 (internal quotation marks and citations omitted). "However, because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record." *Id.* (internal quotation marks and alteration, and citations omitted). "The burden falls upon the Commissioner at the fifth step of the disability evaluation process to prove that the claimant, if unable to perform [his] past relevant work [and considering his residual functional capacity, age, education, and work experience], is able to engage in gainful employment within the national economy." *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).

"The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational

4

background, age, and work experience.'" *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)) (alterations in original).

Unsuccessful claimants for disability benefits may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits. 42 U.S.C. §§ 405(g), 1383(c)(3). The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached a different result. *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012). Rather, "[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess*, 537 F.3d at 127 (internal quotation marks omitted) (quoting *Shaw*, 221 F.3d at 131). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citations omitted).

Inquiry into legal error requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act." *Moran v. Astrue*, 569 F.3d

5

108, 112 (2d Cir. 2009) (second alteration in original) (internal quotation marks omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

## Discussion

### I. The ALJ's Decision

The ALJ analyzed plaintiff's application using the five-step sequential evaluation process, as mandated by the Act's implementing regulations. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since February 23, 2012, the alleged onset date. (Tr. at 12.) At step two, the ALJ determined that plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spines, shoulder disorder, knee disorder, GERD, asthma, deviated septum with chronic sinusitis, and obstructive sleep apnea. (*Id.* at 13.) The ALJ concluded that plaintiff's coronary artery disease, hypertension, and hyperlipidemia are non-severe impairments that do not significantly limit his ability to perform basic work activities. (*Id.*) The ALJ found that the coronary heart disease had only required routine, minimal monitoring by plaintiff's cardiologist, and hypertension and hyperlipidemia had been controlled with medications generally and were asymptomatic. (*Id.*)

At step three, the ALJ determined that plaintiff's impairments, considered singly or in combination, did not meet or medically equal the severity of the listed impairments in Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (Tr. at 14.) Specifically, the ALJ found that plaintiff's impairments did not meet the criteria of Listings 1.02, 1.04, 3.03, and 8.04. (*Id.*) First, she determined that plaintiff's knee and shoulder injuries did not qualify under Listing 1.02 because there was no evidence that plaintiff's knee injury resulted in an inability to ambulate effectively or that his shoulder injury prevented him from performing fine and gross movements effectively. (*Id.*) Second, the ALJ concluded that Listing 1.04 was not met because there was no evidence in plaintiff's medical record of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. (*Id.* at 15.) The ALJ also considered Listing 3.03 and found that Plaintiff's asthma did not qualify because there was no evidence of a FEV1 score less than or equal to the value in Table VI-B for plaintiff's age, gender, and height without shoes, and no evidence of exacerbations or complications requiring three hospitalizations within a 12-month period and at least 30 days apart. (*Id.*) Finally, the ALJ determined that plaintiff's chronic sinusitis did not qualify under Listing 8.04 because there

was no evidence of extensive fungating or ulcerating skin lesions. (*Id.*)

At step four, the ALJ concluded that plaintiff was unable to perform any of his past relevant work as a firefighter. (*Id.* at 22.) The ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work,[1] with the following limitations: no more than occasionally pushing or pulling; no more than occasionally climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; no more than occasionally balancing or stooping; never kneeling, crouching, or crawling; no more than frequently reaching; no more than occasionally reaching overhead; no more than frequently handling and fingering; avoiding concentrated exposure to temperature extremes, wetness, and humidity; avoiding even moderate exposure to pulmonary irritants (such as fumes, odors, dust or gases); and avoiding any exposure to hazardous machinery, unprotected heights, and operational control of moving machinery. (*Id.*)

---

[1] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

At step five, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that plaintiff could perform despite his restrictions. (*Id.* at 23-24.) The vocational expert testified at the January 3, 2019 hearing before the ALJ that plaintiff could perform the requirements of representative occupations such as price marker, furniture rental sales representative, and cashier. (*Id.*)  Accordingly, the ALJ found that plaintiff was not "disabled" and not entitled to disability benefits under the Act. (*Id.* at 28.)

## I. The ALJ Did Not Consider Plaintiff's Non-Severe Impairments in the RFC Determination

"An ALJ's failure to account for an impairment in the RFC analysis is grounds for remand." *Davila v. Comm'r of Soc. Sec.*, No. 16-cv-4774(KAM), 2018 WL 5017748, at *5 (E.D.N.Y. Oct. 16, 2018). *See Parker-Grose v. Astrue*, 462 F. App'x. 16, 18 (2d Cir. 2012) ("Furthermore, even if this Court concluded that substantial evidence supports the ALJ's finding that [plaintiff's] mental impairment was nonsevere, it would still be necessary to remand this case for further consideration because the ALJ failed to [take into] account [plaintiff's] mental limitations when determining her RFC.  A RFC determination must account for limitations imposed by both severe and nonsevere impairments."); *accord Schmidt v. Colvin*, No. 15-cv-2692(MKB), 2016 WL 4435218, at *13 (E.D.N.Y. Aug. 19, 2016) ("Where an ALJ fails to account for

9

any functional limitations associated with the [non-severe] impairments in determining the claimant's RFC, a court must remand for further administrative proceedings.") (alteration in original) (internal quotation marks and citations omitted).

Although the ALJ's finding that plaintiff's coronary artery disease, hypertension, and hyperlipidemia were not severe was supported by the record, the ALJ failed to explain how these non-severe impairments informed her determination of plaintiff's RFC. In fact, there is no mention of any of these conditions in the ALJ's step four analysis. (Tr. at 15–22.) The ALJ's failure to consider plaintiff's non-severe impairments in determining his RFC was legal error and remand is warranted for this reason. On remand, the ALJ should consider whether additional medical opinion evidence regarding the functional limitations caused by the non-severe impairments is warranted.

**II. The ALJ's Insufficient Credibility Determination and Explanation**

The Court also finds that the ALJ, in characterizing plaintiff's treatment as "routine and conservative," did not consider whether his treatment can be attributed to other reasons and not be indicative of the severity of his conditions. Indeed, plaintiff testified during the hearing that he is unwilling to receive surgery for his degenerative disc disease due to potential adverse effects and that he was first diagnosed with high blood

10

pressure after his septoplasty in 2014. (*Id.* at 1086–87.) Furthermore, plaintiff's medical record indicates that though epidural steroid injections and physical therapy helped improve his movement, they did not improve his pain levels. (*Id.* at 664.)

Social Security Ruling 16-3P states, "We will not find an individual's symptoms inconsistent with the evidence in the record [based on the frequency or extent of the treatment sought not being comparable to the degree of his subjective complaints or if he fails to follow the prescribed treatment] without considering possible reasons he . . . may not comply with treatment or seek treatment consistent with the degree of his . . . complaints." SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017). Here, the ALJ did not consider the reasons presented by plaintiff for not pursuing a more aggressive treatment regime and instead merely noted the "conservative" treatment. (Tr. at 21.) On remand, the ALJ should consider the reasons plaintiff may not seek treatment consistent with the degree of his complaints prior to determining that the alleged intensity and persistence of his symptoms are inconsistent with the overall evidence of the record.

11

### III. The ALJ's RFC Determination Is Not Supported by Substantial Evidence

Finally, the Court finds that the ALJ's RFC determination is not supported by substantial evidence. "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks omitted) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)). If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld. 42 U.S.C. § 405(g).

Medical records alone cannot provide substantial evidence for an RFC determination; rather, an "ALJ's RFC determination must be supported by a medical *opinion* in the record at that time." *Pearson v. Comm'r of Soc. Sec.*, No. 20-cv-3030(AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021) (emphasis added). Here, the ALJ evaluated the opinions of Dr. Gelin, a consultative examiner, Dr. Gonzalez-Mendez, a non-examining expert, Dr. Ghavami, plaintiff's treating cardiologist, and Dr. Alicandri, plaintiff's treating internist. (Tr. 19-21.)

The ALJ found Dr. Gelin, Dr. Ghavami, and Dr. Alicandri to be unpersuasive. (*Id.*) She gave "little weight" to the opinion of Dr. Gelin, the consultative examiner, because his opinion that

12

plaintiff had no limitation was not supported by his examination report, which "identified a limited and painful range of motion of the neck, mild-to-moderate pain on lumbar flexion, mild upper extremity weakness, and decreased grip strength of both hands," and inconsistent with the treating records.  (*Id.* at 19.)

The ALJ gave "very little weight" to the opinion of Dr. Ghavami, plaintiff's treating cardiologist.  (Tr. at 20–21.)  According to the ALJ, Dr. Ghavami opined on conditions outside of his area of specialty, such as plaintiff's orthopedic problems and anxiety, and his assessments as to plaintiff's functional limitations, namely, being able to walk only one to two blocks without rest or severe pain and being off task twenty-five percent or more of the workday, were mere restatements of plaintiff's subjective beliefs.  (*Id.*)  Furthermore, the ALJ concluded that Dr. Ghavami's opinion was not consistent with the record.  (*Id.*)

The ALJ also gave "very little weight" to the opinion of Dr. Alicandri, plaintiff's treating internist, that plaintiff had the following limitations: sitting less than two hours total and standing and/or walking less than two hours total in an eight-hour workday; rarely lifting and/or carrying up to 20 pounds; never climbing ladders and rarely performing other postural activities; avoiding nearly all exposure to environmental conditions; and being off task twenty-five percent or more of the workday and absent more than four days per month.  (*Id.*)  In weighing Dr.

13

Alicandri's opinion, the ALJ noted that the extreme functional limitations identified by Dr. Alicandri are "grossly inconsistent with the objective evidence of record." (*Id.* at 21.)

In contrast, the ALJ gave "significant weight" to the opinion of a non-examining state medical consultant, Dr. Gonzalez-Mendez, that a single decisionmaker's[2] assessment that plaintiff retained the ability to perform a reduced range of light work was reasonable. (*Id.* at 19–20.) In giving significant weight to Dr. Gonzalez-Mendez's opinion, the ALJ reasoned that it was "supported by the record." (*Id.*) Notably, Dr. Gaonzalez-Mendez's singe-page medical evaluation was based entirely on his review of plaintiff's medical record available at the time (which did not include Exhibits 11F to 22F of the Administrative Transcript) and the single decisionmaker's Disability Determination Explanation. (*Id.* at 36–46; 535.) Therefore, though acknowledging the extent and the length of the treating relationships between plaintiff and Drs. Ghavami and Alicandri, seven and fourteen years, respectively, at the time of her decision, the ALJ conformed her findings exclusively to a non-examining expert.

---

[2] Sigle decision-makers are "non-physician disability examiners who may make the initial disability determination in most cases without requiring the signature of a medical consultant." *Rivera v. Comm'r Soc. Sec.*, 394 F. Supp. 3d 486, 494–95 (S.D.N.Y. 2019).

14

Under the "treating physician rule,"[3] the medical opinion of a treating source as to the nature and severity of a claimant's impairments is entitled to "controlling weight," where the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Cichocki v. Astrue*, 534 F. App'x 71, 74 (2d Cir. 2013) (internal quotation marks omitted) (quoting 20 C.F.R. § 404.1527(c)(2)).

"An ALJ who refuses to accord controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Id.* (internal quotation marks omitted) (quoting *Halloran*, 362 F.3d at 32). "The ALJ must then 'comprehensively set forth [her] reasons for the weight assigned

---

[3] In 2017, new regulations were issued that changed the standard for evaluating medical opinion evidence for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c. However, because Plaintiff filed his claim on May 31, 2016, the previous regulations, including the treating physician rule, still apply. *See Conetta v. Berryhill*, 365 F. Supp. 3d 383, 395 n.5 (S.D.N.Y. 2019).

to a treating physician's opinion.'" *Id.* (quoting *Burgess*, 537 F.3d at 129).

"Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence." *Avila v. Comm'r of Soc. Sec. Admin.*, No. 20-cv-1360(ER), 2021 WL 3774317, at *20 (S.D.N.Y. Aug. 9, 2021), *report and recommendation adopted*, 2021 WL 3774188 (S.D.N.Y. Aug. 25, 2021). Here, the ALJ conformed her findings exclusively to the opinion of a non-examining expert who did not have the benefit of plaintiff's entire medical record at the time his opinion was rendered. *See Jones v. Comm'r of Soc. Sec.*, No. 10-cv-5831(RJD), 2012 WL 3637450, at *3 (S.D.N.Y. Aug. 22, 2012) (remanding after court determined a non-examining physician's opinion that the ALJ had relied on was not substantial evidence given the physician had access to limited treatment records).

In addition to Dr. Gonzalez-Mendez's opinion, the ALJ based her RFC determination on what she viewed as Plaintiff's "routine and conservative" treatment and his ability to perform daily activities, such as house chores, driving, and walking his dog. (Tr. 21.) Though evidence of daily functioning can certainly inform an RFC determination, it must be supported by an adequate medical opinion. *See Pearson*, 2021 WL 3373132, at *4. In addition, the ALJ's determination that plaintiff's treatment was "routine and conservative" was an impermissible substitution of

16

her opinion for that of medical experts. *See Shaw*, 221 F.3d at 134–35 ("Neither the trial judge nor the ALJ is permitted to substitute [her] own expertise or view of the medical proof for the treating physician's opinion. Essentially, the ALJ and trial court imposed their notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered.") (internal citation omitted). Furthermore, even if the ALJ is correct in her classification of Plaintiff's treatment as "routine and conservative," such treatment does not constitute substantial evidence for the RFC. *Kirby v. Saul*, No. 20-cv-02270(FB), 2021 WL 4197264, at *3 (E.D.N.Y. Sept. 15, 2021) ("[N]either [plaintiff's] ability to perform personal tasks—like showering, getting dressed, and going to doctor's appointments—her 'conservative' treatment choices, nor her decision to return to work after a period of disability amounts to substantial evidence.").

In sum, none of the treating physicians' opinions support the ALJ's RFC determination, and the opinion of a non-examining physician who did not have plaintiff's complete medical record, plaintiff's "conservative" treatment, and his daily functioning do not constitute substantial evidence. Accordingly, there is no substantial evidence to support the ALJ's RFC determination, and remand is necessary. *Pearson*, 2021 WL 3373132, at *4 ("[A]n ALJ's RFC determination must be supported by a medical

17

opinion in the record at that time."); *Avila*, 2021 WL 3774317, at *20 ("Even where a non-examining opinion is properly afforded some weight, it, alone, cannot be considered substantial evidence."); *Kirby*, 2021 WL 4197264, at *3 (remanding after finding evidence of conservative treatment and basic daily functioning cannot constitute substantial evidence).

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings is **GRANTED,** defendant's motion for judgment on the pleadings in **DENIED,** and this case is **REMANDED** for further proceedings consistent with this Memorandum and Order. The Clerk of Court is directed to enter judgment remanding this case, and to close the case.

**SO ORDERED.**

DATED:   May 16, 2022
         Brooklyn, New York

                                              _____/s/_____
                                              **HON. KIYO A. MATSUMOTO**
                                              United States District Judge